1  Martin E. Rosen (108998), mrosen@barwol.com
   Ophir Johna (228193), ojohna@barwol.com
2  Jason C. Love (228881), jlove@barwol.com
   BARGER & WOLEN LLP
3  633 West Fifth Street, 47th Floor
   Los Angeles, California 90071
4  Telephone: (213) 680-2800
   Facsimile: (213) 614-7399
5

6
   Attorneys for Defendant
7  Mutual of Omaha Insurance Company

8            **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | SCOTT PRALINSKY, | CASE NO. C08-3191 MHP (BZx) |

12 |           Plaintiff, |

13 |                   | DEFENDANT MUTUAL OF OMAHA
                        INSURANCE COMPANY'S
14 |    vs.            | **MOTION TO TRANSFER ACTION
                        FOR CONVENIENCE;**
15 | MUTUAL OF OMAHA INSURANCE, | DECLARATION OF DAVE
   | and DOES 1-20, inclusive, | TYLKOWSKI IN SUPPORT
16 |           Defendants. | [28 U.S.C. § 1404(a)]
17
                          [Filed concurrently with Proposed
18                        Order]
19                        Hearing Date:   September 29, 2008
                          Hearing Time:   2:00 p.m.
20                        Courtroom:      15
21                        Complaint Filed: June 2, 2008
22
23
24
25
26
27
28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

i:\office9\9691\039\08pleadings\motion to transfer_final.doc

1    TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT on September 29, 2008, at 2:00 p.m., or as

3    soon thereafter as the matter may be heard in the above-entitled court, located at 450

4    Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Marilyn H.

5    Patel, in Courtroom 15, Defendant Mutual of Omaha Insurance Company ("Mutual

6    of Omaha") will move for an order transferring this action in its entirety to the United

7    States District Court, District of Nebraska, pursuant to 28 U.S.C. § 1404(a).

8        This Motion is made on the grounds that this action might have been brought in

9    the United States District Court, District of Nebraska, and that transfer of this action

10   to that District Court should be effected for the convenience of the parties and

11   witnesses and in the interest of justice.

12       This Motion is based on this Notice, the attached Memorandum of Points and

13   Authorities, the attached Declaration of Dave Tylkowski, the records of this Court,

14   and such other matters as may be raised before or during oral argument at the hearing

15   of this motion.

16

17   Dated: August 19, 2008                BARGER & WOLEN LLP

18

19

20                                         By: _____
                                               MARTIN E. ROSEN
21                                             OPHIR JOHNA
                                               JASON C. LOVE
22                                             Attorneys for Mutual of Omaha
                                               Insurance Company

23

24

25

26

27

28

TABLE OF CONTENTS

PAGE

1. **INTRODUCTION** .............................................................................................................3

2. **SUMMARY OF ARGUMENT**.............................................................................................4

3. **THE COURT SHOULD TRANSFER THIS ACTION TO THE DISTRICT OF NEBRASKA**.......................................................................................................................5

   A.    The Court May Transfer an Action to Another District Court for the Convenience of Parties and Witnesses, and in the Interest of Justice.............................5

   B.    This Action "Might Have Been Brought" in the District of Nebraska ...........................6

   C.    The Convenience of the Parties Requires Transfer.........................................................7

   D.    The Convenience of the Witnesses Requires Transfer ....................................................8

   E.    Transfer to Nebraska Is in the Interest of Justice..........................................................11

         (1)    Plaintiff's Choice of Forum..................................................................................12

         (2)    Location of Agreement's Negotiation and Execution ...........................................13

         (3)    Parties' Contacts With the Chosen Forum ............................................................14

         (4)    The Courts' Familiarity With the Applicable Law................................................14

         (5)    Availability of Compulsory Process......................................................................16

         (6)    Ease of Access to Sources of Proof.......................................................................17

         (7)    Difference in Costs of Litigation...........................................................................17

         (8)    Docket Congestion ................................................................................................18

4. **CONCLUSION** ................................................................................................................18

1

TABLE OF AUTHORITIES

PAGE

2

**Cases**

3

*A.J. Industries, Inc. v. United States*, 503 F.2d 384 (9th Cir. 1974) .................................................. 8

*Braun v. New York Life Ins. Co.*, 46 Cal.App.2d 335(1941) ............................................................ 14

*Bryant v. ITT Corp.*, 48 F.Supp.2d 829 (N.D. Il. 1999) ...................................................................... 12

*Cohen v. Metropolitan Life Ins. Co.*, 32 Cal.App.2d 337 (1939) ..................................................... 14

*E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465 (E.D. Cal. 1994) ...................................... 5

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) .................................................................................. 5

*Geo F. Martin Co. v. Royal Ins. Co. of America*, 2004 WL 1125048 at * 2 (N.D. Cal. 2004) ..... 11

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ............................................................................................. 6

*In re Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003) .......................................................... 7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ................................................... 5, 11

*Klaxcon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................................... 13

*Lewis v. ACB Business Services, Inc.*, 135 F.3d 389 (6th Cir. 1998) ............................................... 12

*Milliken v. Meyer*, 311 U.S. 457 (1940) ............................................................................................. 6

*New Image, Inc. v. Travelers Indem. Co.*, 536 F.Supp. 58 (E.D. Pa. 1981) .................................. 11

*New York Life Ins. Co. v. Blair*, 40 Cal.App.2d 494 (1940) ........................................................... 14

*Norwood v. Kirkpatrick*, 349 U.S. 29 (1955) ..................................................................................... 6

*Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313 (11th Cir. 1990) ....................................................... 6

*Patton v. Cox*, 276 F.3d 493 (9th Cir. 2002) ..................................................................................... 13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ...................................................................... 12, 13

*Promuto v. Waste Management, Inc.*, 44 F.Supp.2d 628 (S.D. N.Y. 2004) ...................................... 8

*Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48 n. 12 (D. D.C. 2000) ............................................... 12

*Saleh v. Titan Corp.*, 361 F.Supp.2d 1152 (S.D. Cal. 2005) ............................... 6, 8, 11, 12, 15, 16

*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985) ........................... 11

*Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043 (3rd Cir. 1973) ............................. 7

*Van Dusen v. Barrack*, 376 U.S. 612 (1946) .................................................................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-ii-

1

**Statutes**

2 28 U.S.C.

§ 1332 ................................................................................................................................. 6
3
§ 1391(a)(1) ........................................................................................................................ 7
§ 1391(c) ............................................................................................................................. 7
4
§ 1404(a) .............................................................................................................. 5, 12, 13

5 California Civil Code

§ 1646 ................................................................................................................................ 14

6

7

**Rules**

8 Federal Rules of Civil Procedure

§45(c)(3)(A)(ii) ............................................................................................................. 15, 16

9

10

11

12          ,

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.     INTRODUCTION

This is an action for breach of contract, "bad faith," fraud, and intentional infliction of emotional distress arising out of Mutual of Omaha's decision to stop paying benefits under a disability insurance policy issued to Plaintiff Scott Pralinsky ("Pralinsky"). Mutual of Omaha moves to have this action transferred to the United States District Court, District of Nebraska, on the grounds that the transfer is appropriate for the convenience of the parties and witnesses and in the interest of justice.

In 2000, Mutual of Omaha, a Nebraska company with its headquarters in Omaha, Nebraska, issued a disability insurance policy to Pralinsky. At that time, Pralinsky lived in Washington and worked there as a mortgage broker. In 2001, Pralinsky moved to Rancho Mirage, California, where he continued to work as a mortgage broker.

Also in 2001, Pralinsky submitted a claim under the subject policy, contending that anxiety and depression had rendered him disabled under the terms of the policy. Mutual of Omaha began paying policy benefits to Pralinsky under a reservation of rights.

In May 2004, Pralinsky moved to Costa Rica, where he has been living and working to date. Pralinsky also claims to be a Costa Rican citizen.

As part of its continuing investigation and evaluation of Pralinsky's claim, Mutual of Omaha regularly requested that Pralinsky submit updated proofs of loss, and periodically obtained medical records and requested that Pralinsky submit to independent medical examinations – all in accordance with the provisions of the policy. In August 2007, while Pralinsky was still living in Costa Rica, Mutual of

1  Omaha stopped paying him benefits under the policy because medical and other

2  information indicated that Pralinsky was no longer disabled as defined by the policy.

3

4  ## 2.    SUMMARY OF ARGUMENT

5

6  This action should be transferred to the District of Nebraska for several

7  reasons. First, there is no rational basis whatsoever for Pralinsky's choice of filing

8  suit in Northern California. Pralinsky is a resident of Costa Rica (and has been a

9  resident of Costa Rica for several years). He represents on his company's website

10 that he is a citizen of that country. The policy was issued to him when he was a

11 Washington resident. He does not live in northern California, nor is there any

12 indication that he has *ever* lived in Northern California. He received disability

13 payments until several years *after* he moved to Costa Rica, and it was only *after* that

14 move, and *after* he established treatment with a medical provider in Costa Rica, that

15 disability payments to him ceased. In sum, Pralinsky has no connection to Northern

16 California or the geographic area surrounding this Court. Under such a factual

17 scenario, the law is that his arbitrary decision to file this action in California is

18 accorded little deference, if any.

19 Second, the convenience of the parties and witnesses demands transfer.

20 Pralinsky currently resides and works in Costa Rica, so it would be equally

21 convenient for him to attend trial and/or any other court proceedings in Nebraska as

22 in California. The percipient witnesses with apparent knowledge regarding

23 Pralinsky's alleged condition and its effect on him – including Pralinsky himself, his

24 wife, his treating doctor since 2004, his co-workers, and his various business and

25 social acquaintances – are all located in Costa Rica, not in California. On the other

26 hand, several employees of Mutual of Omaha, including (i) at least five percipient

27 witnesses who are likely to testify in this action, (ii) representatives who will likely

28 attend settlement conferences in the action; and (iii) representatives who will likely

1  attend trial in the action, are all located in Nebraska. When balancing the interests of

2  these witnesses against the interests of a citizen of another country who has no

3  connection with the district in which suit is filed, the only reasonable conclusion is

4  that transfer is warranted.

5  Finally, transfer of the action to the District of Nebraska is in the interest of

6  justice. As discussed more fully below, the factors considered by courts support the

7  conclusion that this action should be transferred.

8  In short, there is no good reason to maintain this action in this Court. This

9  motion should be granted and this case should be transferred to the District of

10  Nebraska.

11

12  **3.    THE COURT SHOULD TRANSFER THIS ACTION TO THE**

13  **DISTRICT OF NEBRASKA**

14

15        A.    The Court May Transfer an Action to Another District Court for

16              the Convenience of Parties and Witnesses, and in the Interest of

17              Justice

18

19  Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties, witnesses

20  and in the interest of justice," the court may transfer an action pending in a proper

21  venue "to any other district or division where it might have been brought." 28 U.S.C.

22  § 1404(a); *see Ferens v. John Deere Co.,* 494 U.S. 516, 519 (1990).

23  Transfer of an action pursuant to § 1404(a) is addressed to the district court's

24  inherent discretion, and the statute is interpreted broadly to allow the court to

25  consider the particular facts of each case. *See Jones v. GNC Franchising, Inc.,* 211

26  F.3d 495, 498 (9th Cir. 2000); *E. & J. Gallo Winery v. F. & P. S.p.A.,* 899 F.Supp.

27  465, 466 (E.D. Cal. 1994). The district court's discretion to transfer an action

28  pursuant to § 1404(a) is significantly broader than its discretion to dismiss an action

1 under the doctrine of *forum non conveniens*. *Saleh v. Titan Corp.,* 361 F.Supp.2d
2 1152, 1155-56 (S.D. Cal. 2005) (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 31-32
3 (1955)).

B.   This Action "Might Have Been Brought" in the District of Nebraska

8 An action "might have been brought" in a transferee court if, at the time the
9 action was filed: (1) that court would have had subject matter jurisdiction; (2) the
10 defendants would have been subject to personal jurisdiction in that court; and (3)
11 venue would have been proper in that court. *See Hoffman v. Blaski,* 363 U.S. 335,
12 343-44 (1960).

13 The instant action "might have been brought" in the District of Nebraska. That
14 court would have had jurisdiction over the subject matter of this action based on the
15 same grounds that conferred subject matter jurisdiction on this Court, *i.e.,* "diversity"
16 jurisdiction pursuant to 28 U.S.C. § 1332. As demonstrated by Pralinsky's Complaint
17 and Mutual of Omaha's Notice of Removal, the parties are citizens of different states
18 and the matter in controversy exceeds \$75,000. *See* Complaint at ¶¶ 25-28; Notice of
19 Removal at ¶¶ 4-5, 6-12; *see also* Declaration of Dave Tylkowski ("Tylkowski
20 Decl.") at ¶ 3.

21 The District of Nebraska also would have had personal jurisdiction over
22 Mutual of Omaha in this action. It is well-established that, regardless of any inquiry
23 as to the existence of "minimum contacts," a district court may exercise personal
24 jurisdiction over citizens of the forum state. *See Milliken v. Meyer,* 311 U.S. 457, 62-
25 63 (1940). As noted above, Mutual of Omaha is a citizen of Nebraska. *See* Notice of
26 Removal at ¶¶ 4-5; Tylkowski Decl. at ¶ 3. Moreover, a defendant may *consent* to
27 personal jurisdiction. *See Pardazi v. Cullman Med. Ctr.,* 896 F.2d 1313, 1319 (11th
28 Cir. 1990). Mutual of Omaha is the only defendant in this action, and it expressly

1 consents to personal jurisdiction in the District of Nebraska. Therefore, Mutual of
2 Omaha would be subject to personal jurisdiction in that court.

3      Furthermore, venue would have been proper in the District of Nebraska. In
4 diversity actions, venue is proper in a "district where any defendant resides, if all
5 defendants reside in the same State." *See* 28 U.S.C. § 1391(a)(1). In this regard, a
6 corporation is deemed to "reside" in any district in which it is subject to personal
7 jurisdiction. *See* 28 U.S.C. § 1391(c). Since, as demonstrated above, Mutual of
8 Omaha is subject to personal jurisdiction in the District of Nebraska, it is deemed to
9 "reside" in that district and accordingly venue is proper there.

10      As such, this action "might have been brought" in the District of Nebraska.

11

12           C.     The Convenience of the Parties Requires Transfer

13

14      The convenience of the parties requires that this action be transferred to the
15 District of Nebraska. Because Pralinsky currently resides and works in Costa Rica,
16 transfer of the action to the District of Nebraska would not negatively impact his
17 convenience. *See* Tylkowski Decl. at ¶¶ 8, 11. Pralinsky will need to retain counsel
18 to represent him in either forum.[1] He will have to travel regardless of the forum to
19 attend depositions, conferences, or trial. If any activity is necessary in Costa Rica, it
20 will be necessary regardless of the forum. In sum, Pralinsky's "convenience" is no
21 different in California than in Nebraska.

22      On the other hand, transfer of the action to the District of Nebraska would
23 greatly convenience Mutual of Omaha and the individual witnesses who reside in
24 Nebraska. Several employees of Mutual of Omaha are expected to testify as
25 witnesses in this action (discussed more fully below). Those witnesses, as well as the

26
---
27 [1] Any argument by Pralinsky that *his counsel's* convenience weighs against transfer should
be rejected. Convenience of counsel simply is *not* considered in ruling on a motion to
28 transfer under § 1404(a). *See, e.g., In re Horseshoe Entertainment,* 337 F.3d 429, 434 (5th
Cir. 2003); *Solomon v. Continental American Life Ins. Co.,* 472 F.2d 1043, 1047 (3rd Cir.

1  representatives of Mutual of Omaha who will attend any settlement conferences,
2  mediation sessions and the trial of this action, are all located in Nebraska. *See*
3  Tylkowski Decl. at ¶ 5. The depositions, if any, of those individual witnesses will
4  take place in Nebraska, meaning if this case remains in California, Pralinsky's
5  counsel will have to travel to Nebraska for those depositions. If the case is
6  transferred to Nebraska, and Nebraska counsel is retained by Pralinsky, that is not the
7  case. So in that respect, a transfer even benefits Pralinsky.

8        Therefore, the convenience of the parties favors transfer of this action to the
9  District of Nebraska.

10

11        D.        The Convenience of the Witnesses Requires Transfer

12

13        The convenience of the witnesses in this action likewise favors the action being
14  transferred. In ruling on a motion to transfer for convenience, district courts consider
15  not simply the number of witnesses located in the respective districts, but the *nature*
16  *and quality of their testimony in relation to the issues in the case. See A.J. Industries,*
17  *Inc. v. United States,* 503 F.2d 384, 389 (9th Cir. 1974); *Saleh,* 361 F.Supp.2d at
18  1160-61. Little or no consideration, however, is given to the convenience of retained
19  *expert* witnesses. *See Promuto v. Waste Management, Inc.,* 44 F.Supp.2d 628, 639-
20  40 (S.D.N.Y. 2004).

21        Here, several important percipient witnesses are located in Nebraska, while
22  none are located in California. Pralinsky alleges claims for fraud, bad faith,
23  intentional infliction of emotional distress, and breach of contract against Mutual of
24  Omaha. *See* Complaint. These claims arise out of Mutual of Omaha's decision to
25  stop paying Pralinsky benefits in connection with his disability insurance claim. *See*
26  Complaint at ¶ 6. In addition to the breach of contract claim, Pralinsky's claims place
27  at the heart of this case the correctness and reasonableness of the claims handling

28  1973).

1 actions taken, and decisions made, by Mutual of Omaha's employees (*e.g.,* claim
2 examiners, supervisors, investigators, etc.), as well as the truth of statements
3 allegedly made by those employees.

4       Approximately three claim representatives, a former claims supervisor, and a
5 Senior Special Investigator participated in the handling of Pralinsky's claim on behalf
6 of Mutual of Omaha over the claim's duration. *See* Tylkowski Decl. at ¶ 4. These
7 *five* witnesses are expected to testify regarding, among other things: the actions they
8 took in the course of handling the claim; the information they learned regarding
9 Pralinsky during the pendency of the claim; the bases for their decisions over the
10 course of the claim, including the decision to stop paying benefits; their
11 communications with Pralinsky during the pendency of the claim; and their overall
12 conduct in the handling of the claim. *See* Tylkowski Decl. at ¶ 4. As explained
13 above, the correctness and reasonableness of the decisions and conduct of Mutual of
14 Omaha's employees is at the heart of this case. <u>All five of these witnesses – who are</u>
15 <u>expected to be key percipient witnesses – as well as all other Mutual of Omaha</u>
16 <u>employees, are located in Nebraska.</u> *See* Tylkowski Decl. at ¶ 4. And because one of
17 the witnesses is no longer a Mutual of Omaha employee, he cannot be compelled by
18 process or by virtue of his employment to testify or attend any proceeding in
19 California, but he can be so compelled in Nebraska.

20       Moreover, Pralinsky lives and works in Costa Rica – not in California. *See*
21 Tylkowski Decl. at ¶¶ 8, 11. In fact, *he has been living and working in Costa Rica*
22 *since May 2004* (more than three years before Mutual of Omaha stopped paying him
23 benefits). *See* Tylkowski Decl. at ¶¶ 7, 9-10; *see also* Complaint at ¶ 5. Thus, not
24 only is the principal witness in this case – Pralinsky himself – located in Costa Rica,
25 but so, too, are his business and social acquaintances for the past four years
26 (including co-workers, business clients, friends, members of his gym, and others) –
27 all of whom are expected to be important percipient witnesses regarding the pivotal
28 issue in this case: Pralinsky's alleged depression and its purported effect on his ability

1  to work.[2] *See* Tylkowski Decl. at ¶¶ 7-11. Pralinsky's wife, Ligia L. García

2  Gutiérrez, also lives in Costa Rica, and is likely to have important information

3  regarding the purported manifestation of Pralinsky's alleged depression. *See*

4  Tylkowski Decl. at ¶ 7.

5      Additionally, Pralinsky reportedly has been receiving treatment for his alleged

6  depression from Dr. Gioconda Batres Méndez, a doctor located in Costa Rica, since

7  October 2004. *See* Tylkowski Decl. at ¶ 10. Pralinsky has not provided any

8  information regarding any health care treatment by any doctor other than Dr. Méndez

9  since 2004. Therefore, the nature of Pralinsky's medical condition prior to and since

10  the time benefits were terminated in 2007 will be provided solely by a doctor in Costa

11  Rica, not in California.[3] Thus, the following percipient witnesses (and potentially

12  others) appear to be located in Costa Rica:

13      • Pralinsky;

14      • Pralinsky's wife, Ligia L. García Gutiérrez;

15      • Dr. Gioconda Batres Méndez;

16      • Pralinsky's co-workers at C.M. Jungle Healing de Centroamerica;

17      • Pralinsky's business and social acquaintances since May 2004

18          (including clients, friends, members of his gym, etc.).

19  ───────────

20  [2] Mutual of Omaha will present evidence that Pralinsky started his own business in Costa Rica prior to the termination of his disability benefits, that he continues to run the company he founded, and that he has generated personal earnings from that company that disqualify

21  him from disability benefits under the policy. All of that activity – which directly bears on Pralinsky's entitlement to benefits – occurred in Costa Rica, not California.

22

23  [3] Although Pralinsky received treatment for his alleged depression from doctors in the Palm Springs, California area between October 2001 and April 2004, those doctors appear to have *no information* concerning Pralinsky's condition three years later, around or after August

24  2007, when Mutual of Omaha stopped paying benefits under the policy. *See* Complaint at ¶ 5. Pralinsky's condition between October 2001 and April 2004 is not at issue in this case, as

25  it is undisputed that Mutual of Omaha paid all allowable benefits under the policy for that period. *See* Complaint at ¶¶ 4-5. Mutual of Omaha contends that Pralinsky's condition *as*

26  *of August 21, 2007* – nearly three and a half years after he was last treated by a doctor in California – did not entitle him to continue receiving disability benefits. (The doctors who

27  treated Pralinsky in California between 2001 and 2004 are located in Riverside County, which in any event is *outside the Northern District of California*.) Thus, the witnesses who

28  have information regarding Pralinsky's condition during the only relevant time period in this

1  *See* Tylkowski Decl. at ¶¶ 7-11.

2      In short:

3  • at least five important percipient witnesses are located in Nebraska;

4  • the remaining percipient witnesses in this case are located in Costa Rica; and

5  • no percipient witnesses are located in the Northern District of California.

6

7          E.    Transfer to Nebraska Is in the Interest of Justice

8

9      In determining whether a transfer is in the interest of justice, courts in the

10  Ninth Circuit generally consider the following factors: (1) the plaintiff's choice of

11  forum; (2) the location where the relevant agreement was negotiated and executed;

12  (3) the respective parties' contacts with the forum; (4) the state that is most familiar

13  with the applicable law; (5) the availability of compulsory process to compel

14  attendance of unwilling non-party witnesses; (6) the ease of access to sources of

15  proof; and (7) the differences in the costs of litigation in the two forums. *See Jones,*

16  *supra,* 211 F.3d at 498-99; *see also Geo F. Martin Co. v. Royal Ins. Co. of America,*

17  2004 WL 1125048 at * 2 (N.D. Cal. 2004).  Some courts also consider the respective

18  districts' docket congestion. *See Saleh, supra,* 361 F.Supp.2d at 1167.

19

20          (1)    Plaintiff's Choice of Forum

21

22      Pralinsky's decision to initiate this action in California should be accorded no

23  deference.  Although a plaintiff's choice of forum is generally accorded substantial

24  weight in ruling on a motion to transfer venue for convenience, it is given much less

25  weight when the plaintiff commences an action in a forum that is not his residence.

26  *See Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir.

27  1985); *New Image, Inc. v. Travelers Indem. Co.,* 536 F.Supp. 58, 59 (E.D. Pa. 1981);

28
────────────
case are located in Costa Rica, not in California.

1 *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 832 (N.D. Il. 1999); *Lewis v. ACB Business*
2 *Services, Inc.,* 135 F.3d 389, 413 (6th Cir. 1998); *see also Reiffin v. Microsoft Corp.,*
3 104 F.Supp.2d 48, 54, n. 12 (D. D.C. 2000). This is even more so when the plaintiff
4 is a *foreign citizen. See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)
5 (stating that "a foreign plaintiff's choice [of forum] deserves less deference" because
6 the assumption that the chosen forum is convenient is "much less reasonable"); *see*
7 *also Saleh, supra,* 361 F.Supp.2d at 1157 (holding that the rule applies equally in the
8 context of a motion to transfer pursuant to § 1404(a) as in the context of a *forum non*
9 *conveniens* motion).

10 Pralinsky is a resident and a citizen of Costa Rica, and had been so for several
11 years when his claim for benefits was denied and when he filed this action. *See*
12 Tylkowski Decl. at ¶¶ 7-8, 12. Accordingly, his arbitrary decision to file this action
13 in California should be accorded no deference.

14
15                    (2)    Location of Agreement's Negotiation and Execution
16

17 Pralinsky applied for the disability insurance policy that is at the center of this
18 litigation in Washington. *See* Tylkowski Decl. at ¶ 6. The policy was issued in
19 Nebraska, and delivered to Pralinsky in Washington, where he was residing at the
20 time. *See* Tylkowski Decl. at ¶¶ 3, 6. If anything, therefore, this factor weighs in
21 favor of venue in either Washington, where the policy was delivered, or Nebraska,
22 where the policy was issued. It certainly cannot weigh in favor of maintaining the
23 action in California, since the policy was not applied for, issued, or delivered in
24 California. Because Washington has no connection, other than delivery of the policy,
25 Nebraska is the logical choice when this factor is considered.

26 ///
27 ///
28 ///

-12-

1

2

### (3)    Parties' Contacts With the Chosen Forum

3        Neither the parties nor their actions with respect to the subject matter of this

4   litigation have any real connection to the Northern District of California. As noted

5   above, Mutual of Omaha is headquartered in Nebraska. *See* Tylkowski Decl. at ¶ 3.

6   Moreover, the policy in question was applied for in Washington by a Washington

7   resident. *See* Tylkowski Decl. at ¶ 6. It was issued in Nebraska and delivered to

8   Pralinsky in Washington. *See* Tylkowski Decl. at ¶¶ 3, 6. While it is true that

9   Pralinsky subsequently moved to Southern California and lived there during part of

10  the period of his alleged disability, he was (and had been, for a number of years) a

11  resident and citizen of Costa Rica when Mutual of Omaha stopped paying him

12  benefits under the policy. *See* Tylkowski Decl. at ¶¶ 7-8, 12; Complaint at ¶ 5.

13  Indeed, *this action concerns Pralinsky's condition and eligibility for benefits during*

14  *the time that he was a resident and citizen of Costa Rica, not of California. See*

15  Complaint at ¶ 5. Additionally, Mutual of Omaha's handling of Pralinsky's claim,

16  and its decision to stop paying Pralinsky benefits – the very conduct which Pralinsky

17  challenges in this action – occurred in Nebraska, not in California. *See* Tylkowski

18  Decl. at ¶¶ 3-4. As such, neither Pralinsky nor Mutual of Omaha had any real contact

19  with California with respect to the subject matter of this action, and this factor

20  therefore favors transfer of the action.

21

22

### (4)    The Courts' Familiarity With the Applicable Law

23

24        A federal court exercising diversity jurisdiction applies the choice of law rules

25  of the forum state. *Klaxcon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941);

26  *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002). Where a case is transferred

27  pursuant to § 1404(a), the choice of law rules of the state from which the case was

28  transferred apply. *Piper Aircraft Co.,* 454 U.S. at 244 n. 8 (citing *Van Dusen v.*

*Barrack,* 376 U.S. 612 (1946)). Thus, California's choice of law rules would apply to determine the governing substantive law in this case, regardless of whether the case is transferred to the District of Nebraska. *See id.*

Under California's choice of law rules, an insurance contract is "interpreted according to the law and usage of the *place where it is to be performed*; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Civ. Code § 1646 (emphasis added). Courts applying this statute have held that, where a disability insurance policy is issued to an insured in one state, where the insured then resides, and the insured later moves to another state, the policy was "to be performed" in the state where the insured was residing when the breach occurred (*i.e.,* when payment of benefits ceased), for purposes of determining the governing law. *See, e.g., Braun v. New York Life Ins. Co.,* 46 Cal.App.2d 335, 345-46 (1941); *see also New York Life Ins. Co. v. Blair,* 40 Cal.App.2d 494, 499 (1940) (holding that "[l]iability for the breach of a contract partly performed in one state, and made and partly performed in another state, is fixed by the laws of the state wherein the breach occurred," and the state where the breach occurred was the state where the insured resided when the insurer refused to pay further disability benefits). Therefore, since Pralinsky resided in Costa Rica when Mutual of Omaha allegedly breached the policy by terminating the payment of benefits under the policy, the law of Costa Rica would appear to apply.

Notably, if the policy in question is held not to "indicate a place of performance," the substantive law of Nebraska, the state where the policy was issued, would apply. *See* Civ. Code § 1646; *see also Cohen v. Metropolitan Life Ins. Co.,* 32 Cal.App.2d 337, 342 (1939).

Because the substantive law of Costa Rica or Nebraska likely will govern this action, this factor does not weigh in favor of maintaining this action in the Northern District of California. This Court does not appear to have any greater familiarity with Costa Rica's or Nebraska's substantive law than does the District of Nebraska. On

-14-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1   the contrary, given the possibility that Nebraska law would apply, this factor weighs
2   *in favor of transfer* to the District of Nebraska, as that court's familiarity with
3   Nebraska law almost certainly is greater than this Court's.

### (5)    Availability of Compulsory Process

7   The parties' ability to compel the appearance of the *non*-party witnesses
8   identified above at trial (assuming those witnesses would be unwilling to appear
9   voluntarily) would be completely unaffected by the transfer of this action to the
10  District of Nebraska. Neither the Northern District of California nor the District of
11  Nebraska would be able to compel any of the non-party witnesses located in Costa
12  Rica (*e.g.,* Dr. Mendéz, Pralinsky's wife, and his co-workers and other
13  acquaintances) to appear at trial. *See* FED. R. CIV. P. 45(c)(3)(A)(ii). As such, unless
14  those witnesses appear at trial voluntarily, their testimony would have to be presented
15  in the form of their deposition testimony regardless of whether the trial proceeds in
16  California or in Nebraska. Accordingly, this factor is neutral.

### (6)    Ease of Access to Sources of Proof

20  This factor addresses the "*ease of access*" to sources of proof, not whether
21  evidence would be unavailable with or without the transfer. *Saleh,* 361 F.Supp.2d at
22  1166. Inasmuch as Mutual of Omaha's offices are located in Nebraska, its files and
23  records in connection with Pralinsky's disability claim are located there as well. *See*
24  Tylkowski Decl. at ¶ 4. Those files and records would therefore be more easily
25  accessed from Nebraska than from California. Moreover, since Pralinsky was
26  residing, working, and receiving treatment in Costa Rica during the relevant time
27  period, any records in his custody or control (or in the custody or control of other
28  Costa Rica residents) are likely located in Costa Rica and would not be more easily

accessed from California than from Nebraska. *See* Tylkowski Decl. at ¶¶ 7-12; Complaint at ¶ 5.

This factor therefore weighs in favor of transfer.

### (7)     Difference in Costs of Litigation

The cost of litigation will likely be lower if the case is transferred to the District of Nebraska. As discussed above, the key percipient witnesses in this case are located in Costa Rica, and therefore would have to be deposed there regardless of the venue of this case. *See* FED. R. CIV. P. 45(c)(3)(A)(ii). Moreover, regardless of the venue, Pralinsky would have to fly from Costa Rica to appear for his deposition and to attend trial and any settlement conference, and it would not likely be more costly for him to fly to Nebraska than to California. However, the cost to both plaintiff and defendant of deposing the Nebraska witnesses will be lower due to the fact that counsel for both parties will be located in Nebraska and will not have to travel. The same consideration applies to attendance at any court mandated hearings or trial.

Therefore, to the extent this factor leans any direction, it favors transfer.

### (8)     Docket Congestion

In 2007, the median time from the filing of a civil case until trial was 24.6 months in the Northern District of California, and 22.0 months in the District of Nebraska. *See www.uscourt.gov/cgi-bin/cmsd2007.pl.* Accordingly, the respective districts' docket congestion weighs slightly in favor of transfer. *See Saleh,* 361 F.Supp.2d at 1167.

Based on the above, transfer of this action to the District of Nebraska is in the interest of justice.

1

### 4.   <u>**CONCLUSION**</u>

2

3   For the reasons set forth above, Mutual of Omaha respectfully requests that the

4   Court grant this motion in its entirety.

5

6   Dated:  August 19, 2008                    BARGER & WOLEN LLP

7

8

9   By:
      MARTIN E. ROSEN
10    OPHIR JOHNA
      JASON C. LOVE
11    Attorneys for Mutual of Omaha
      Insurance Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVE TYLKOWSKI

I, Dave Tylkowski, declare as follows:

1.    This declaration is submitted in support of Defendant Mutual of Omaha Insurance Company's ("Mutual of Omaha") Motion to Transfer the Action for Convenience.

2.    I am currently employed by Mutual of Omaha as a Supervisor in the Group Disability Claims area. I was previously employed by Mutual of Omaha as a Disability Claims Specialist. In that capacity, I was responsible for handling disability claims on individual policies issued by Mutual of Omaha, including the disability claim made by Plaintiff Scott Pralinsky ("Pralinsky") under Policy No. 379091-98M (the "Policy"), which policy is the subject of this lawsuit. I have reviewed Mutual of Omaha's entire claim file pertaining to the claim submitted by Pralinsky under the Policy (the "Claim"), and I am familiar with its contents. If called as a witness in this matter, I could and would competently testify to all facts set forth in this declaration from my own personal knowledge and from the claim file documents that were kept in the ordinary course of Mutual of Omaha's business.

3.    Mutual of Omaha is a corporation incorporated under the laws of Nebraska. Mutual of Omaha's principal place of business (including its headquarters and its entire administrative, underwriting, and claim department staffs) is in Nebraska. Mutual of Omaha issued the Policy in Nebraska.

4.    Approximately three claim representatives, a former claims supervisor, and a Senior Special Investigator participated in the handling of Pralinsky's claim on behalf of Mutual of Omaha over the claim's duration. These Mutual of Omaha employees, and a former employee, are expected to testify regarding, among other things: the actions they took in the course of handling the claim; the information they learned regarding Pralinsky during the pendency of the claim; the bases for their

1  decisions over the course of the claim, including the decision to stop paying benefits;
2  their communications with Pralinsky during the pendency of the claim; and their
3  overall conduct in the handling of the claim. All of these witnesses, as well as all
4  other Mutual of Omaha employees who were involved in the handling of the Claim,
5  were located in Nebraska. None of them were located in California. Moreover,
6  Mutual of Omaha's claim file and related records in connection with the Claim are
7  located in Nebraska.

8      5.    Since Mutual of Omaha's headquarters and staff are located in Nebraska,
9  the representatives who will likely attend any settlement conferences, depositions, or
10 trial in this action on behalf of Mutual of Omaha are located in Nebraska.

11     6.    Attached as Exhibit "1" is a true and correct copy of Pralinsky's
12 Application for the Policy, reflecting that Pralinsky applied for the Policy on June 1,
13 2001 IN Seattle, Washington, and that at that time Pralinsky resided in Seattle,
14 Washington and worked as a mortgage broker.

15     7.    Attached as Exhibit "2" is a true and correct copy of Pralinsky's U.S.
16 Individual Income Tax Return, Forms 1040 and 2555-EZ (Foreign Earned Income
17 Exclusion), for the year 2005, received by Mutual of Omaha from Pralinsky in
18 connection with the Claim. Form 1040 lists Pralinsky's address as Apartado 8-7100,
19 Paraiso, Cartago, Costa Rica, and states that he is married to Ligia L. Garcia
20 Gutierrez. Form 2555-EZ reflects that Pralinsky's "bona fide residence" in Costa
21 Rica began on May 15, 2004.

22     8.    Attached as Exhibit "3" is a true and correct copy of a letter dated
23 November 14, 2007 from Pralinsky to Mutual of Omaha, received in connection with
24 the Claim. The letter reflects that Pralinsky's address as of November 2007 was still
25 Apartado 8-7100, Paraiso, Cartago, Costa Rica.

26     9.    Attached as Exhibit "4" is a true and correct copy of a Policyowner's
27 Continuance of Disability Report dated July 13, 2007, signed by Pralinsky and
28 received by Mutual of Omaha from him in connection with the Claim. In this

1 document, Pralinsky states that he resumed working on a full-time basis (40 hours per
2 week) on June 20, 2004 (after he had moved to Costa Rica). Pralinsky also states in
3 this document that he exercises at a gym.

4     10.    Attached as Exhibit "5" is a true and correct copy of a letter dated
5 October 10, 2006 from Dr. Gioconda Batres Mendez, received by Mutual of Omaha
6 in connection with the Claim. The letter reflects that Dr. Mendez is located in Costa
7 Rica and states that she has been treating Pralinsky every other month since October
8 2004. The letter also states that Pralinsky began working for C.M. Jungle Healing de
9 Centroamerica, SA, in Costa Rica since before Dr. Batres began treating him in
10 October 2004.

11     11.    Attached as Exhibit "6" is a true and correct copy of a check dated
12 August 15, 2007 to Pralinsky, issued in Cartago, Costa Rica, and received by Mutual
13 of Omaha in connection with the Claim. The check demonstrates that Pralinsky's
14 employer as of August 2007 was C.M. Jungle Healing de Centroamerica, SA, and
15 was signed on behalf of the employer by Isaac Garcia Gutierrez.

16     12.    Attached as Exhibit "7" is a true and correct copy of a printout from the
17 web site of Tropical Adventures: *www.tropicaladventures.com/story.php*. This
18 document states, in pertinent part, that Pralinsky "is co-founder and Executive
19 Director of the Tropical Adventures Foundation." It also states that Pralinsky "has
20 lived in Costa Rica since 2004" and is "[n]ow a Costa Rican citizen." (Emphasis
21 added.)

22     I declare under penalty of perjury under the laws of the State of California that
23 the foregoing in true and correct.

24     Executed on the 21st day of July, 2008 at Omaha, Nebraska.

25
26
27                                 Dave Tylkowski
28

**EXHIBIT 1**

JUN 06 2000 15:21 FR CARLOS ROCHA DO    L206 232 9020 TO UNDERWRITING    P.11/16

| HOME OFFICE ADMINISTRATIVE USE ONLY | | Application reviewed by: |
|---|---|---|
| Manager/Wholesaler | District Sales Manager/Sub Wholesaler | PL-IMAGE 08 JUN 00 |



**MUTUAL OF OMAHA INSURANCE COMPANY**
**MUTUAL OF OMAHA PLAZA**
**OMAHA, NEBRASKA 68175**

Application for: ☒ Disability Income  ☐ Accident Medical Expense
(Check all that apply)  ☐ Accident Loss of Time  ☐ Replacement
☐ Addition to Existing Plan (                    )

| Section A | GENERAL QUESTIONS |
|---|---|

1. Proposed Insured's name:  First _Scott_  Middle  Last _Pralinsky_

2. Home phone number: _206 - 624 - 5550_   Best time to call: ☒ _9_ a.m. ☐ _5_ p.m.

3. Legal residence address:  Number _200_  Street _West Mercer #207_  City _Seattle_  State _WA_  ZIP _98119_

4. Mailing address for premium notices:  Number _same_  Street  City  State  ZIP

5. Are you and any persons proposed for insurance a citizen of the United States? ☒Yes ☐ No  (If "No," do all persons have an alien registration receipt "Permanent Visa"?  ☐ Yes ☐ No  If "Yes," Permanent Visa Number: _____  Date of arrival in United States _____

6. Occupation _Mortgage Broker_  Duties _Mortgage Loans_

Are you Self-Employed, a Sole Proprietor or a partner in a Partnership? ☐ Yes ☒No

Are you currently engaged in your occupation on an active full time basis (30 or more hours per week)? ☒Yes ☐ No (If "No," explain including date of last full-time work).

Name of your firm or employer and address _Paider Mortgage_

Do you or your spouse (if proposed for insurance) have any part-time or off season occupation? ☐ Yes ☒No

(If "Yes," give duties.) Applicant's duties _loan officer_   Spouse's duties _n/a_

Spouse's full-time occupation ____  _(RA #619)_

7. Please complete for all persons Proposed for Insurance. Attach separate sheet if necessary.

| First Name, Middle Initial and Last Name | Social Security Number | Relationship to Proposed Insured | Birth Date Mo. Day Yr. | Age | Sex | Ht. | Wt. | Full-Time Student |
|---|---|---|---|---|---|---|---|---|
| Scott Pralinsky | | Self | | 30 | m | 5'6 | 140 | ☐ N/A |
| | | Spouse | | | | | | N/A |
| | - - | | | | | | | ☐ Yes ☐ No |
| | - - | | | | | | | ☐ Yes ☐ No |
| | - - | | | | | | | ☐ Yes ☐ No |
| | - - | | | | | | | ☐ Yes ☐ No |
| | - - | | | | | | | ☐ Yes ☐ No |

MA5793 (Series WA)    -1-

WF-PRALINSKY-0084

JUN 06 2000 15:22 FR CARLOS ROCHA DO     L206 232 9020 TO UNDERWRITING     P.12/16

## Section B                    UNDERWRITING INFORMATION

1. During the past 10 years, has any person proposed for insurance ever received medical care for or had: (Check all that apply) — ☐ Kidney Disorder ☐ Cancer ☐ Heart Disease ☐ Alcoholism ☐ Liver Disorder ☐ Stroke ☐ Diabetes ☐ Nervous Disorder ☐ Digestive Disorder ☐ Back Disorder ☐ High Blood Pressure ☐ Arthritis ☐ Tumor ☐ Anemia ☐ Prostate Disorder ☐ Respiratory Disorder ☒ None of These.

2. During the past 10 years, other than shown in B1 above, has any person proposed for insurance: (Check all that apply) — ☒ Had or been advised to seek treatment for any illness or injury ☐ Had surgery ☐ Been hospitalized ☒ Had a medical examination or medical care ☐ None of These.

3. Has any person proposed for insurance used tobacco in any form in the last 12 months? ☐ Yes ☒ No

4. Has any person proposed for insurance been diagnosed or treated by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC) or Human Immunodeficiency Virus (HIV) Infection (symptomatic or asymptomatic)? ☐ Yes ☒ No

5. Are you or any person in your immediate family pregnant? ☐ Yes ☒ No
   If "Yes," give anticipated delivery date _____ and Doctor's name _____

6. Complete the following to expand upon all affirmative answers in this Section.

| NAME | CONDITION(S) |
|------|--------------|
| Scott | December 99 — upset stomach, flu — now 100% okay |
| Scott | 1998 — Annual/Regular Physical Exam — okay |
|       | Physical Exams yearly for 12 years in military ~ OKAY |
|       |  |
|       |  |
|       |  |

7. Complete for **DISABILITY INCOME COVERAGE** Only

| a.   Gross annual earned income from your occupation (after business expenses) | Current Annual Earned Income | Actual Prior Calendar Year |
|---|---|---|
| Salary | $ 127,000 | $ 98,150 |
| Fees & Commissions (includes per diem allowance) | $ | $ |
| Other (describe) | $ | $ |
| TOTAL | $ 127,000 | $ 98,150 |

b. Do you receive unearned income (such as dividends, interest, net rentals, pensions, etc.) reportable for federal tax purposes and/or do you have tax exempt unearned income in excess of $1,500 per month this year or in either of the two prior calendar years? ☐ Yes ☒ No   If "Yes," show monthly totals.

Current $ _____     Prior $ _____     Two Years Prior $ _____

-2-

WF-PRALINSKY-0085

JUN 06 2000 15:22 FR CARLOS ROCHA DO    L206 232 9020 TO UNDERWRITING    P.13/16

## Section C — PLAN INFORMATION

### ACCIDENT LOSS OF TIME (AD1)

**MONTHLY ACCIDENT DISABILITY BENEFIT**

☐ $100  ☐ $200  ☐ $300  ☐ $400  ☐ $500
☐ Regular or ☐ Accident Exp Plus

**AVAILABLE ACCIDENT MEDICAL RIDERS**

☐ 5152M (Individual)  ☐ 5153M (Family)
   ☐ $0 Deductible or ☐ $25 Deductible
   ☐ $500 or ☐ $1,000 Benefit

☐ 0695M (Individual)  ☐ 0726M (Family)
            $25 Deductible
   ☐ $2,500 or ☐ $3,500 Benefit

☐ 6349M (Individual)  ☐ 6355M (Family)
   $5,000 Benefit with $25 Deductible

☐ *Other Rider _____
☐ *Other Rider _____
*Please specify rider number and description

Amount Collected  $ _____
Initial Mode
Initial Premium    $ _____
Renewal Mode
Renewal Premium  $ _____

### ACCIDENT MEDICAL EXPENSE (ASME)

☐ $500 Benefit - Deductible    ☐ $0 or ☐ $25
☐ $1,000 Benefit - Deductible  ☐ $0 or ☐ $25
☐ $2,500 Benefit - Deductible  ☐ $25
☐ $3,500 Benefit - Deductible  ☐ $25
☐ $5,000 Benefit - Deductible  ☐ $25

**AVAILABLE RIDERS**

☐ *Other Rider _____
☐ *Other Rider _____
*Please specify rider number and description

Amount Collected  $ _____
Initial Mode
Initial Premium    $ _____
Renewal Mode
Renewal Premium  $ _____

(21A #b19) *Upgrade to 1A 091

### DISABILITY INCOME

Policy/Cert # _21b__    Monthly Benefit $ _4900_    Policy/Cert Premium $ _12b·36_

Elimination Period (See Available Options)
☐ 30 days  ☐ 60 Days  ☒ 90 Days  ☐ 180 Days  ☐ 365 Days  ☐ _____

Benefit Period (See Available Options)
☐ 6 Months  ☐ 1 Year  ☐ 2 Years  ☐ 5 Years  ☒ To Age 65  ☐ _____

| Rider Number | Rider Description | | Rider Premium |
|---|---|---|---|
| COLA | COLA | 7458 m | $ 70.5b |
| SIS | SIS | 7459 m | $ 18.00 |
|  |  |  | $ |
|  |  |  | $ |

| Amount Collected | Initial Mode | Initial Premium | Renewal Mode | Renewal Premium |
|---|---|---|---|---|
| $ 429.84 | BSP | $ 214.92 | BSP | $ 214.92 |

-3-

WF-PRALINSKY-0086

JUN 06 2000 15:23 FR CARLOS ROCHA DO    L206 232 9020 TO UNDERWRITING    P.14/16

## Section D — OTHER COVERAGE INFORMATION

1. Do you, your spouse or any named dependent already have or are you applying for hospital, disability, major medical, HMO or dental coverage with another company?  ☐ Yes  ☐ No

### Indicate Plans in Force During the Last 18 Months or Plans Being Applied for

| Name | Company or Association and Address | Pol/Cert # | Issue Date | Paid-to Date | Type of Coverage ☐ Major Medical ☐ Major Hospital ☐ HMO ☐ Disability ☐ Dental |
|------|-----------------------------------|------------|------------|--------------|--------------------------------------------------------------------------------|
| | | | | | List Deductible, Maximum Amount, Elimination Period, Benefits, Benefit Period, etc. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

2. Is this insurance being purchased to replace any existing insurance or HMO coverage?  ☐ Yes  ☐ No

    (a) If "Yes," give details, including name of company, policy/plan number and termination date. _____

    _____

    (b) If "Yes," have you received a copy of the Notice of Replacement (if required in your state)?  ☐ Yes  ☐ No

3. Is anyone that is proposed for this insurance covered under or eligible for Medicare or Medicaid?  ☐ Yes  ☐ No

4. Have you received the appropriate Outline/Summary of Coverage?  ☐ Yes  ☐ No

5. Complete only if replacing Mutual of Omaha in-force coverage with another Mutual of Omaha plan.

    I am requesting termination of my Policy/Certificate No. _____ on the effective date of the new policy/certificate for which I am applying. I understand that all benefits under the policy/certificate being terminated will cease on the effective date of the new policy/certificate.

    NOTE: Benefits for which you apply may not take effect whenever there is duplication of benefits which would result in excess coverage.

6. Complete only for Association or Franchise Coverage

    I belong to the _____  Date joined _____
    (Full Name of Organization)    (Mo.)    (Yr.)

7. Full name of beneficiary _____  Relationship _____

-4-

WF-PRALINSKY-0087

JUN 06 2000 15:23 FR CARLOS ROCHA DO    L206 232 9020 TO UNDERWRITING    P.15/16

| Section F | AGREEMENTS |
|---|---|

I, the undersigned, agree that all answers in this application: (a) are true and complete to the best of my knowledge and belief and (b) will be relied on to determine insurability and (c) which are incorrect or misleading, may void the application effective the issue date.

If the full initial premium is paid on the date of the completed health and accident insurance application and I am eligible for the policy/certificate applied for or any substitute policy/certificate in accordance with the underwriting standards of Mutual of Omaha in effect on the date of the application, the date of the policy/certificate will be the date of the application or the date of expiration of any replaced coverage. I agree that no temporary or interim insurance of any kind will be in effect.

The underwriting standards of Mutual will not be applied to changes in health after the application date unless a medical examination is required. Any medical examinations, which are required, must be completed for any coverage to go into effect. If any Proposed Insured is not eligible for the insurance applied for or any substitute policy/certificate, I agree that no policy/certificate of any kind will be in effect.

No Agent/Producer can: (a) waive or change any receipt; or (b) agree to issue a policy/certificate. I have: (a) read the Agreements section and the receipt; and (b) read and approved the answers as recorded.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claims containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Signed at _____Seattle, WA_____    Date __6/1/2000__

X __Sed Golphin_____

_Signature of Proposed Insured_    _Signature of Spouse (if a Proposed Insured)_

I/We certify that during an in-person interview with the Proposed Insured(s), I/we asked each question exactly as written and recorded the answers provided by the Proposed Insured(s) completely and accurately. ☐ Yes  ☐ No

__Debra Thelen_____    _____
_Signature of Agent/Producer_    _Signature of Agent/Producer_

__Carlos Rocha DO_____    _____
_Office Name_    _Office Name_

__Mercer Island WA 98040__    _____
_Office Address_    _Office Address_

Agent/Producer's Stamp __DEBRA K. GOLDTHORP 258200__    Agent/Producer's Stamp _____

Agent/Producer's License/ID Number __258200__    Agent/Producer's License/ID Number _____

Requested Effective Date of Coverage __6__ __1__ __2000__
                                   Mo.   Day   Year

**4517*686100 (O) WA**
C ROCHA DIV

MA2793

-5-

WF-PRALINSKY-0088

**EXHIBIT 2**

**Form 1040**

Department of the Treasury—Internal Revenue Service

# U.S. Individual Income Tax Return  2005

(99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2005, or other tax year beginning , 2005, ending , 20    OMB No. 1545-0074

**Label** (See instructions on page 16.) Use the IRS label. Otherwise, please print or type

L A B E L H E R E

Your first name and initial: **SCOTT**   Last name: **PRALINSKY**

Your social security number

If a joint return, spouse's first name and initial: **LIGIA L**   Last name: **GARCIA GUTIERREZ**

Spouse's social security number  **NRA**

Home address (number and street). If you have a P.O. box, see page 16: **APARTADO 8 7100 PARAISO**   Apt. no.

**You must enter ▲ your SSN(s) above. ▲**

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.: **CARTAGO COSTA RICA  CENTRAL AMERICA**

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16) ▶   You ☐  Spouse ☐

**Filing Status**  Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5 ☐ Qualifying widow(er) with dependent child (see page 18)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a . . . . . . .
b ☒ Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
c Dependents:

| (1) First Name   Last Name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see pg 19) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see page 19

Boxes checked on 6a and 6b: **2**
No. of children on 6c who:
● lived with you: **0**
● did not live with you due to divorce or separation (see page 20): **0**
Dependents on 6c not entered above: **0**

d Total number of exemptions claimed . . . . . . . . . . . . . . . . . . . . . .

Add numbers on lines above ▶ **2**

**Income**

Attach Forms W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 22.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 . FEC = 25000. . . . . . . . . | 7 | 25000 |
| 8a | Taxable interest. Attach Schedule B if required . . . . . . . . . . . . . . | 8a | 675 |
| b | Tax-exempt interest. Do not include on line 8a . . . . . | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required . . . . . . . . . . . . . . | 9a | |
| b | Qualified dividends (see page 23) . . . . . . . . . . . | 9b | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 23) . . . | 10 | 186 |
| 11 | Alimony received . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . . . . . . . . . | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | 65663 |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . . . . . . | 14 | |
| 15a | IRA distributions . . . . . | 15a | | b Taxable amount (see page 25) | 15b | |
| 16a | Pensions and annuities . . | 16a | | b Taxable amount (see page 25) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | -2661 |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . . . . . . . . | 18 | |
| 19 | Unemployment compensation . . . . . . . . . . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits . . . | 20a | | b Taxable amount (see page 27) | 20b | |
| 21 | Other income. List type and amount (see page 29) SEE STATEMENT | 21 | -52990 |
| 22 | Add the amounts in the far right column for lines 7 - 21. This is your total income ▶ | 22 | 35873 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see page 29) . . . . . . . . . . . | 23 | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 . . . | 25 | | |
| 26 | Moving expenses. Attach Form 3903 . . . . . . . . . | 26 | | |
| 27 | One-half of self-employment tax. Attach Schedule SE . . | 27 | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans . . . . . | 28 | | |
| 29 | Self-employed health insurance deduction (see page 30) . . | 29 | | |
| 30 | Penalty on early withdrawal of savings . . . . . . . . | 30 | | |
| 31a | Alimony paid. b Recipient's SSN ▶ | 31a | | |
| 32 | IRA deduction (see page 31) . . . . . . . . . . . . | 32 | | |
| 33 | Student loan interest deduction (see page 33) . . . . . | 33 | 726 |
| 34 | Tuition and fees deduction (see page 34) . . . . . . . | 34 | | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | | |
| 36 | Add lines 23 through 31a and 32 through 35 . . . . . . . . . . . . . . . ▶ | 36 | 726 |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income . . . . . . . . ▶ | 37 | 35147 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 78    QNA Copyright (c) 2005 TAXSLAYER.    Form **1040** (2005)

WF-PRALINSKY-0473

| Form **2555-EZ**<br>Department of the Treasury<br>Internal Revenue Service (99) | **Foreign Earned Income Exclusion**<br>▶ See separate instructions.    ▶ Attach to Form 1040. | OMB No. 1545-1326<br>**2005**<br>Attachment<br>Sequence No. **34A** |
|---|---|---|

Name shown on Form 1040

SCOTT PRALINSKY    Your social security number

| | | | |
|---|---|---|---|
| **You May Use<br>This Form<br>If You:** | ● Are a U.S. citizen or a resident alien.<br>● Earned wages/salaries in a foreign country.<br>● Had total foreign earned income of<br>$80,000 or less.<br>● Are filing a calendar year return that<br>covers a 12-month period. | **And You:** | ● Do not have self-employment income.<br>● Do not have business/moving expenses.<br>● Do not claim the foreign housing<br>exclusion or deduction. |

**Part I**    Tests To See If You Can Take the Foreign Earned Income Exclusion

**1    Bona Fide Residence Test**

a   Were you a bona fide resident of a foreign country or countries for a period that includes an entire tax year
    (see page 2 of the instructions)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes  [ ] No
    ● If you answered "Yes," you meet this test. Fill in line 1b and then go to line 3.
    ● If you answered "No," you do not meet this test. Go to line 2 to see if you meet the Physical Presence Test.

b   Enter the date your bona fide residence began ▶ 05/15/2004 , and ended (see instructions) ▶

**2    Physical Presence Test**

a   Were you physically present in a foreign country or countries for at least 330 full days during –
    { 2005 or
    { any other period of 12 months in a row starting or ending in 2005? . . . . . . . . . . . . . . . . . . [ ] Yes  [ ] No
    ● If you answered "Yes," you meet this test. Fill in line 2b and then go to line 3.
    ● If you answered "No," you do not meet this test. You cannot take the exclusion unless you meet the
    Bona Fide Residence Test above.

b   The physical presence test is based on the 12-month period from ▶            through ▶

**3    Tax Home Test.** Was your tax home in a foreign country or countries throughout your period of bona fide
    residence or physical presence, whichever applies? . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes  [ ] No
    ● If you answered "Yes," you can take the exclusion. Complete Part II below and then go to page 2.
    ● If you answered "No," you cannot take the exclusion. Do not file this form.

**Part II**    General Information

| 4  Your foreign address (including country)<br><br>APARTADO 8 7100 PARAISO CARTAGO COSTA RICA | 5  Your occupation<br><br>MANAGER |
|---|---|

| 6  Employer's name<br><br>STRENGTH IN NUMBERS INC | 7   Employer's U.S. address (including ZIP code)<br><br>42335 WASHINGTON STREET F353 PALM DESERT CA 92211 | 8   Employer's foreign address<br><br>NONE |
|---|---|---|

9    Employer is (check any that apply):
a   A U.S. business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X]
b   A foreign business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ]
c   Other (specify) ▶                                                                     [ ]

10a  If you filed Form 2555 or 2555-EZ after 1981, enter the last year you filed the form. ▶
b   If you did not file Form 2555 or 2555-EZ after 1981, check here ▶  [X]  and go to line 11a now.
c   Have you ever revoked the foreign earned income exclusion? . . . . . . . . . . . . . . . . . . . [ ] Yes  [ ] No
d   If you answered "Yes," enter the tax year for which the revocation was effective. ▶

11a  List your tax home(s) during 2005 and date(s) established. ▶ COSTA RICA, 05/15/2004

b   Of what country are you a citizen/national? ▶ USA

For Paperwork Reduction Act Notice, see page 3 of separate instructions.    Form **2555-EZ** (2005)

QNA Copyright (c) 2005 TAXSLAYER

**EXHIBIT 3**

582764098100

MCRD-11/16/07

November 14, 2007

Scott Pralinsky
Apartado 8-7100
Paraiso, Cartago
Costa Rica

Individual Disability Claims
Mutual of Omaha
Mutual of Omaha Plaza
Omaha, NE 68175

To Whom It May Concern:

I understand after reading my policy and after speaking with my attorney that I have the right to a full copy of my claims file. I'd appreciate it if you could send it immediately to me at my address on file, the same one listed above.

**My claim number is 582764098100**

You may reach me at US number 504-208-4412, which will forward to me in Costa Rica should you have any questions.

Sincerely,

Scott Pralinsky

Scott Pralinsky

WF-PRALINSKY-0424

.

**EXHIBIT 4**

To: Dave Tylkowski    Page 1 of 3                    2007-07-29 23:26:27 (GMT)              13108618969  From: Scott Pralinsky

E582764098100



MUTUAL *of* OMAHA INSURANCE COMPANY
Mutual of Omaha Plaza
Omaha, NE 68175
1 800 775 1000
mutualofomaha.com

MCRD: 7/20/07

## POLICYOWNER'S CONTINUANCE OF DISABILITY REPORT

Claim No. 582764098100                    Date of last report   6 /13 / 07
Policy Number: 379091- 98M

| | |
|---|---|
| 1. Policyowner's full name | Weight 145  Age 37 |
| 2. Give dates physician treated you since last report. | Office   7/13/07<br>Therapy<br>Hospital |
| 3. If confined in a hospital since last report, give hospital and period covered. | Hospital and address    From _____ to _____ |
| 4. What are your activities and how do you spend your time? | work, family, home, gym |
| 5. Describe any change in your condition. | None |
| 6. Have you resumed any duties? | No<br>Yes  X   Date you resumed work  6/20/04 |
| 7. Number of Hours Worked: 40/wk | This Months Earnings  2,500<br>(Attach Earnings Documents) |

As part of our claims procedure, a consumer report may be secured through personal interviews with third parties, which may include information as to your character, reputation, mode of living, etc. You have the right to make written request within a reasonable period of time, concerning the nature and scope of this investigation.

Date 7/13/07          Policyowner's Signature  Scott Pralinsky

Address Apartado 8-7100  Parouso  Costa Rica
        Number and Street      City or Town      State      ZIP Code

Phone No. 011-506-860-0246    Policy No. 379091 - 98M
          Area Code   Exchange   Number

Please check if this is a new address. ( )

Is the change:
Permanent ( )
Temporary ( )

M20410  Rev. 1-2000                          - 1 -

WF-PRALINSKY-0110

**EXHIBIT 5**

58276 409 #100

MCLO / 6 06

## DRA. GIOCONDA BATRES MÉNDEZ
CLINICA SAN ANGEL
FRENTE CLINICA CATOLICA
COSTADO NORTE DE LA IGLESIA
GUADALUPE, COSTA RICA
506-253-6767

Mr. Matt Aldy, PCI                                              10 October 2006
Sr. Special Investigator
Mutual of Omaha Insurance Company
Mutual of Omaha Plaza
Omaha, NE 68175

Dear Mr. Aldy:

Here is the information you requested regarding my patient, Scott Pralinsky, your claim
number 27-640981, SSN:              DOB:

The charge for this report is $75 USD. We do not use Social Security Numbers in our
system, but rather codigos. My codigo is 1321. Please contact me at the address or number
above if you have any further questions or need any further assistance.

I first started seeing Mr. Pralinsky in October of 2004. He was last treated on 9/12/06, though
I last saw him on 10/5/06 when he came into my office with your 30-page fax (dated 10/5/06)
and we had a short discussion. I see him every other month. His next appointment is
scheduled for 11/9/06.

Mr. Pralinsky is still being treated by me (psychotherapy and psychopharmacology) for
Generalized Anxiety Disorder, Panic Disorder and Major Depressive Disorder. I've continued
to prescribe him Topamac (300mg), Buspar (30mg), and Remeron (30mg).

His clinical complaints have been consistent with his presentation and behavior throughout
the time I have been treating him. His anxiety continues to have consequential effects upon
his physiological functioning, expressed as somatization concerns and depression.

Over the course of the last year, I have seen Mr. Pralinsky's panic attacks substantially
decrease in frequency. He is still, however, primarily anxious and finds particular situations
and activities elevate his anxiety.

This last year has only seen one incident of major depressive relapse when Mr. Pralinsky's
house was broken into, many things stolen and his dogs were killed. As you can imagine, in
addition to the depression, it was a source of increased anxiety for him.

Since before I started seeing Mr. Pralinsky two years ago, he has been working as the
Director of C.M. Jungle Healing de Centroamerica, SA. (formerly Jungle Healing, Inc.). Your
letter suggested Mr. Pralinsky was the owner of this corporation, so I had my secretary
review public records here in Costa Rica. Mr. Pralinsky is not listed as one of the officers of
the corporation. When he describes his work to me, he speaks of working alone at his home
office on the computer, handling tasks such as online marketing and bookkeeping in small
doses and avoiding stressful situations. I understand that his company employs another full-
time person who manages employees and handles client issues. This work appears to be
satisfying to Mr. Pralinsky, as well as manageable.

WF-PRALINSKY-0418

Back about 5 months ago, Mr. Pralinsky shared with me that he was hoping to lead some spiritual retreats for Green Valley Retreat (his next-door-neighbor), but I understand it never materialized. I was in full support, hoping an opportunity to work with a small group would help Mr. Pralinsky in his recovery. Unfortunately, as it turns out there was never an interest in their programs and all of the retreats were taken off the schedule permanently, as well as the website.

In order to assist Mr. Pralinsky in managing his anxiety, I have been recommending him to schedule activities outside of the house in small doses. This includes reaching beyond his family and close friends in an attempt to meet new people, as well as exploring the area he lives in. We've worked together on some coping skills and he is trying to apply them in real life. His attempt alone in this area is quite significant, though the few trips he has made have still been with family and not on his own.

In addition, I do believe that having had these opportunities to work on his coping skills has contributed to Mr. Pralinsky's recovery from his most recent depressive state more quickly than he has in the past. I was not aware he was chronicling these activities on his website, but am glad to see it. I believe reflecting on his accomplishments while writing about them will assist in the process of his recovery.

On a cognitive level, Mr. Pralinsky can be very forgetful, has difficulty concentrating, procrastinates, and has difficulty making decisions. It's not unusual for him to come up with new ideas that he never implements, such as his idea of writing a couple of books. Unfortunately, these have remained just a great idea, as he has never taken the initiative to move beyond the planning stage. It seems the idea of getting out of the house and having to interview people has been holding him back, as well as his continued procrastination.

Though Mr. Pralinsky has made some progress with the decreasing number of panic attacks and is making a concerted effort to get out of the house on occasion, I still do not feel it is in Mr. Pralinsky's best interest physically or psychologically to place himself in any situations – including occupational situations – which might cause him elevated levels of stress.

Therefore, I have continued to recommend Mr. Pralinsky restrict his work to activities which do not induce stress. He should avoid heavy analysis, the hiring and managing of employees, and avoid trying to accomplish more than one or two tasks in any given day. Though it may be obvious, this includes a restriction on doing any kind of work as a mortgage broker. Any attempt to place Mr. Pralinsky in these elevated levels of stress at this point in his recovery would be setting him up for failure, and would potentially put him in a situation which could reverse the progress he has made to date.

Again, please don't hesitate to contact me if there is anything else I can do for you.

Very truly yours,

*Gioconda Batres m.*

Dra. Gioconda Batres Méndez

Dra. Gioconda Batres Méndez
Médico, Psiquiatra
Código 1321

**EXHIBIT 6**

WF-PRALINSKY-0099

**EXHIBIT 7**





click here to
chat with us

| HOME | ABOUT US | PROJECTS | TOURS | PRICES | FAQ | ENROLL ONLINE |

**About Us**
> Our Mission
> Our Story
> We Are Different

**Projects**
> Community
> Children
> Wildlife

**Tours**

**Enroll Online**

**Volunteer Blog**

**Photo Gallery**

**Testimonials**

**F.A.Q.**

## Our Story



Tropical Adventures was born in 2005 out of the founders' personal experiences of immersing themselves in the culture of Costa Rica, learning the language, sharing perspectives with locals and fostering personal and cultural understanding of the people and community through service and volunteering.

Scott Pralinsky and Isaac Garcia didn't set out to "save the world," but yet to make a difference in the lives of one person at a time.

Pralinsky says, "When we started out, we really didn't know what we were doing. We just knew that we wanted to do something to help out our own community. Once we started doing research and getting out to meet all the individual communities and families and hearing their stories it was really hard to figure out where to start. There was so much need out there and, of course, we wanted to help everyone. But we just started one school at a time, one family at a time. And before we knew it, things took off like crazy. Now we look back just a few years later and it's unbelievable how many people we have helped and how many of those people we consider to be part of our family. It's the best 'job' I've ever had in my life."

Garcia, who grew up in Costa Rica, adds, "In addition to the great feeling of knowing how much

we're helping the people, animals, and the environment here in Costa Rica, I don't think we knew the extent of the impact the program would have on the people who come to volunteer. Besides the sheer beauty of the country itself, I think people are really blown away by the authenticity, warmth and generosity of the Costa Rican people. Almost 100% of our volunteers leave in tears, having made new friends for life. And a good majority of them come back to visit. It's really like we have created a big, international family. I love it!"



**Scott Pralinsky**, is co-founder and Executive Director of the Tropical Adventures Foundation. His previous experience includes 13 years designing and teaching courses to the US Air Force and being a subject matter expert in the area of international crisis response. Outside of his work with the government, Scott also consulted privately for senior executives and board members on merger and acquisition issues for various international corporations, including Smith Barney and Time Warner. Now a Costa Rican citizen, Scott has lived in Costa Rica since 2004 and holds a graduate degree in Spiritual Psychology from the University of Santa Monica.

**Isaac Garcia** is co-founder and Director of Volunteer Services of the Tropical Adventures Foundation. He holds a bachelors degree in Political Science from the University of Costa Rica and an MA in Spiritual Psychology from the University of Santa Monica. In 2003, after specializing in public policy hoping to learn more about possible solutions for addressing some of Costa Rica's economic and social issues, Isaac began working for the Minister of Security, specifically with the Department of International Cooperation. In this position, he worked with national and international foundations to create and execute economic and social projects. Isaac loves his work with Tropical Adventures and enjoys his time traveling and with his many animals on his farm.



Project Coordinator **Roberto Guzmán** was born right here in Cartago and was raised in Alajuela. He holds a degree in Biology from the National University of San José. In January 2008, he decided to leave his science days behind him and is now studying for a masters in Business Administration. Roberto is the friendly voice on the other end of the phone (and computer) who helps each of our volunteers prepare for their trips before they arrive. We're very proud to have









Case 3:08-cv-03191-MHP    Document 11    Filed 08/19/2008    Page 45 of 45

Roberto on our team and welcome him warmly.



**Mauro Herrera** is from right here in Paraíso where our headquarters is. He studied Travel and Tourism in the nearby town of Cartago and then worked as a tour guide and Spanish teacher at La Flor, one of our projects situated in the Central Valley region. Now he's moved to the Caribbean Coast and works as our volunteer coordinator for all the projects in the Puerto Viejo area.

**Ricardo Osorno** has lived in the region of Guanacaste all his life. Since graduating from from the Hispanoamericana University with a degree in Advertising, he's clocked up several years' experience working freelance in the advertising industry. He's now our Volunteer Coordinator for the beautiful region of Guanacaste located in the Pacific Northwest. He'll be your Volunteer Coordinator if you choose one of our projects in this beautiful region. His smile is infectious, he loves his job and he is anxious to welcome you to his beautiful country.



*Success in life has nothing to do with what you gain in life or accomplish for yourself. It's what you do for others.*

**Danny Thomas**

1 | Martin E. Rosen (108998), mrosen@barwol.com
Ophir Johna (228193), ojohna@barwol.com
2 | Jason C. Love (228881), jlove@barwol.com
BARGER & WOLEN LLP
3 | 633 West Fifth Street, 47th Floor
Los Angeles, California 90071
4 | Telephone: (213) 680-2800
Facsimile: (213) 614-7399
5

6

7 | Attorneys for Defendant
Mutual of Omaha Insurance Company

8

9 | **UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

10

11

12 | SCOTT PRALINSKY,

CASE NO. C08-3191 MHP (BZx)

13 |     Plaintiff,

**[PROPOSED] ORDER** GRANTING
DEFENDANT MUTUAL OF OMAHA

14 |     vs.

INSURANCE COMPANY'S MOTION
TO TRANSFER ACTION FOR

15 | MUTUAL OF OMAHA INSURANCE,
and DOES 1-20, inclusive,

CONVENIENCE

16 |     Defendants.

[28 U.S.C. § 1404(a)]

17 |

[Filed concurrently with Motion to
Transfer Action and Declaration of

18 |

Dave Tylkowski]

19 |

Hearing Date: September 29, 2008
Hearing Time: 2:00 p.m.

20 |

Courtroom: 15

21 |

Complaint Filed: June 2, 2008

22

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

i:\office9\9691\039\08pleadings\mtn to transfer_proposed order.doc

1    The Court has considered defendant Mutual of Omaha Insurance Company's

2 motion, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the District of

3 Nebraska for convenience, as well as the related opposition and reply papers and the

4 oral argument of counsel.

5    GOOD CAUSE having been shown, the Court finds that the convenience of

6 the parties and witnesses and the interest of justice favor transfer of the action to the

7 District of Nebraska. The motion is GRANTED, and the action is transferred to the

8 District of Nebraska pursuant to 28 U.S.C. § 1404(a).

9

10   Dated: _____

11

12                                             HON. MARILYN H. PATEL
                                              United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28